IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LYNNE A. REGAN                          :
                                        :                    CIVIL ACTION
              v.                        :
                                        :                    NO. 06-1686
UPPER DARBY TOWNSHIP, ET AL.            :


**SURRICK, J.**                                    **MARCH   11  , 2009**

<u>**MEMORANDUM & ORDER**</u>

Presently before the Court is Defendant GEO Group, Inc., and the Delaware County

Prison's Motion for Summary Judgment (Doc. No. 75).  For the following reasons, the Motion

will be granted.

I.      **FACTUAL BACKGROUND**

This case arises out of Plaintiff's arrests for violations of a Protection from Abuse Order

("PFA order") and other charges.  The instant Motion for Summary Judgment relates to one of

Plaintiff's arrests, which occurred in December 2004 and which resulted in Plaintiff's

incarceration over the Christmas holiday.  We recite only those facts that are material to this

Motion.[1]

At 5:30 p.m. on Wednesday, December 22, 2004, Plaintiff was arrested on two separate

criminal cases.  (Pl.'s Dep. 317-18.)  The first criminal case was a charge of stalking and

harassment in violation of 18 Pa. Cons. Stat. Ann. § 2709  The second was a charge of violation

of a PFA order in violation of 18 Pa. Cons. Stat. Ann. § 6114.  Plaintiff was arraigned on the

_____

[1] A more detailed recitation of the facts – including facts concerning Plaintiff's other
arrests and the circumstances surrounding her criminal prosecutions – are found in the
Memorandum & Order disposing of the Motions for Summary Judgment of Defendants Thomas
A. Johnson, Michael Kehrle, and James Johnson.

charges that evening and bail was set at $10,000.00.  (Pl.'s Dep. 319.)  Unable to post bail,

Plaintiff was transported to the Delaware County Prison where she was processed and placed

into a cell.  (*Id.* at 325, 329).  The next morning, Thursday, December 23, 2004, Plaintiff spoke

with her mother by telephone and arranged for her brother, Michael Regan ("Regan"), to post

bail.[2]  (*Id.* at 336; Regan Dep. 13.)  Regan arrived at the district court between 9:00 and 9:30

a.m. to post Plaintiff's bond.  (Regan Dep. 15-16.)  When the paperwork was ready at 11:30

a.m., Regan asked for a second copy since "[i]t's nice to have a copy of something."  (*Id.* at 21-

22, 25.)  Regan left the district court with two copies of Plaintiff's release paperwork.  (*Id.* at 25,

28.)  He arrived at the prison at "about noon" and gave a copy of the paperwork to the guard at

the front gate, keeping the second copy for himself.  (*Id.* at 28-29.)  Within five or ten minutes,

Regan saw the front gate guard give the paperwork to a K-9 officer who "took [the paperwork]

in the van" and then drove "back towards the prison area."  (*Id.* at 31.)  Regan saw the van drive

into the prison but does not know where the van went after that.  (*Id.* at 32.)

　　　At "[a]bout every hour on the hour until about 4:00 p.m.," Regan "asked [the front gate

guard] what was going on with [Plaintiff's release]," and the guard replied "that they were

processing her."  (*Id.*)  Regan returned to his car in the parking lot, where he waited.  He

observed the guard call the Records Department twice, though he could not hear the

conversation.  (*Id.* at 33-34.)  At 4:00 p.m., Regan asked the guard for another update.  (*Id.* at

35.)  The guard told him to "give me a few minutes" and Regan returned to his car.  (*Id.*)  Fifteen

---

[2] Viewing all facts and inferences in the light most favorable to Plaintiff, we accept
Regan's testimony as true notwithstanding his conviction for perjury.  (*See* Judgment, Doc. Nos.
49, 50, *United States v. Kulp*, No. 97-cr-0014 (E.D. Pa. Apr. 18, 1997).  Regan was found to
have lied to a grand jury about an incident that took place when he was a corrections officer at
the George W. Hill Correctional Facility, the same facility at issue here.

minutes later, the guard called Regan back and told him that Plaintiff "wasn't getting out today" and "I think she has a detainer." (*Id.*) Regan explained to the guard, "I believe Upper Darby checked for detainers before I came out here," which prompted the guard to make another phone call. (*Id.* at 36.) At 4:15 p.m., after the guard spoke with an unknown person, the guard told Regan that "the paperwork is lost." (*Id.*) Regan handed the guard the second copy of the paperwork that he received from the district court. (*Id.*) The guard apologized, took the paperwork, "got in his own personal vehicle," and "went down towards the prison." (*Id.* at 36-37.)

At this point, Regan called the prison's Records Department and spoke with someone who identified himself as Frank DellaSorda. (*Id.* at 39-40.) DellaSorda told Regan that "it was K-9 [that lost the paperwork,] paperwork gets lost all the time" and the K-9 probably "left it in the truck" or "threw it in the doorway and it blew away." (*Id.* at 40, 47.) As Regan was speaking with DellaSorda, the guard from the front gate arrived in the Records Room and handed DellaSorda the second copy of the paperwork. (*Id.* at 40.) At approximately 4:30 p.m., Regan called DellaSorda again. (*Id.* at 41.) This time DellaSorda told him that the paperwork "didn't have a number on it" and Plaintiff "wasn't going to get out today." (*Id.*)

Indeed, the paperwork did have a missing number. For case management purposes, criminal charges in Delaware County are assigned an Offense Tracking Number ("OTN"). (Grear Dep. 31.) The exception to this rule is that criminal charges for violations of PFA orders are assigned Miscellaneous Docket ("MD") numbers. (*Id.*) In this case, the court clerk – not an employee of Defendant GEO Group – mistakenly assigned an OTN to Plaintiff's charges for violation of a PFA order. (*Id.* at 37.) As a result, Plaintiff's commitment paperwork did not

match her release paperwork.[3]  (*Id.*)  It is Defendant GEO Group's policy to halt an inmate discharge when the OTN numbers do not match.  The policy specifically provides that "[t]he Intake/Release Officer will decline the discharge if [the] OTN (Original Tracking Number) on the discharge does not match the OTN (Original Tracking Number) in the inmate's folder." (Policy 2500.01, Doc. No. 75, Ex. H.)  David Owens, Defendant GEO Group's expert, a former Commissioner of the Pennsylvania Department of Corrections, indicated in his report that the policy is consistent with the American Correctional Association's national standard "and sound correctional practices."  (Owens Report, Doc. No. 75, Ex. K.)  Owens opined that "[i]t is far beyond the scope and responsibility of a prison records clerk to correct a court release document without court approval" and that releasing an inmate without proper documentation "could lead to disciplinary action or possibly dismissal of the prison employee."  (*Id.*)

The problem of mis-matching OTN numbers has been occurring at the prison for "[a] long time," and whenever it does happen, Defendant GEO Group's procedure is to call the district justice to resolve the discrepancy.  (Grear Dep. 32.)  At one point on December 23rd, DellaSorda suggested that Regan try to call the district justice in Upper Darby but Regan was unable to get through to anyone.  (Regan Dep. 42-43, 50.)  Regan also tried to call the prison warden, the assistant warden, a captain, and a lieutenant, but was unable "to get a hold of

---

[3] Beth Ann Grear ("Grear"), Defendant GEO Group's records supervisor, testified that she believed that the reason Plaintiff was not released on December 23, 2004, was because of the discrepancy in the paperwork.  (Grear Dep. 37.)  However, DellaSorda handled Plaintiff's paperwork, not Grear.  (*Id.* at 16.)  Grear had "nothing to do" with Plaintiff's release paperwork. (*Id.*)  The statements that DellaSorda made to Michael Regan as an agent of Defendant GEO Group constitute party admissions.  *See* Fed. R. Evid. 801(d)(2).  We view all facts and inferences in the light most favorable to Plaintiff.  We therefore accept that the paperwork was deficient in its numbering (because of a court error) and was also lost by Defendant GEO Group.

anybody that would help [him]." (*Id.* at 48.)  There is no evidence that Defendants GEO Group or the Delaware County Prison did or did not attempt to call the district justice on December 23, 2004, to resolve the discrepancy with Plaintiff's paperwork. (*See* Grear Dep. 37.)  Because of the discrepancy, Plaintiff was not released and Regan returned home.

The next morning was Christmas Eve, Friday, December 24, 2004.  Regan again tried to call the district court in Upper Darby but "didn't get anybody on the phone." (Regan Dep. at 51.)  He then called the Records Department at the prison and spoke with a woman who identified herself as Nicole. (*Id.* at 53-54.)  Regan asked Nicole about his "problem the day before with the numbers and getting [Plaintiff] released," and Nicole told him, "I can't really comment on that, but I could tell you I had nothing to do with it and I would make a complaint to the warden." (*Id.* at 54.)  Regan does not recall making any telephone calls in the following days concerning Plaintiff's release. (*Id.* at 58-59.)  The district court was closed over the Christmas holiday and did not reopen until December 28, 2004. (*See* Doc. No. 94 at 9; Doc. No. 75 at 24.)  On Tuesday, December 28, 2004, Plaintiff was released after the prison staff called the court and resolved the discrepancy with Plaintiff's OTN number.[4] (*See* Pl.'s Am. Omnibus Resp., Doc. No. 94 at 10.)  Because of the delay in processing Plaintiff's paperwork, Plaintiff had remained in prison over the Christmas 2004 holiday.

## II.    PROCEDURAL BACKGROUND

On April 21, 2006, Plaintiff filed a Complaint and thereafter filed an Amended

---

[4] Plaintiff's omnibus response refers to her release on Monday, December 28, 2004. (*See* Doc. No. 94 at 9.)  However, December 28, 2004, was a Tuesday and not a Monday.  Defendant GEO Group does not dispute that Plaintiff was released on December 28, 2004. (*See* Am. Compl. ¶ 67; Def. GEO Group's Ans. ¶ 67.)

Complaint alleging violation of her civil rights, false imprisonment and arrest, and negligence against the moving Defendants arising out of her delayed release from jail.  (*See* Am. Compl., Doc. No. 21.)  Plaintiff's Amended Complaint contains five counts, three of which relate to the moving Defendants.  (*See id.*)  In Count I, Plaintiff asserts multiple civil rights claims under 42 U.S.C. § 1983.[5]  (*See* Am. Compl. ¶¶ 93-99.)  In Count III, Plaintiff asserts claims of false imprisonment and false arrest.  (*See id.* ¶¶ 105-07.)  In Count V, Plaintiff asserts a negligence claim only against Defendant GEO Group.  (*See id.* ¶¶ 113-15.)  The other counts in Plaintiff's Amended Complaint do not relate to the moving Defendants.

Defendants GEO Group and the Delaware County Prison filed the instant Motion for Summary Judgment on Plaintiff's Amended Complaint in its entirety.

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine

---

[5] For purposes of Plaintiff's § 1983 claims, Defendant GEO Group, a private company, was acting under the color of state law since it provided daily functional services for the Delaware County Prison.  (*See* Am. Compl. ¶17; Def. GEO Group's Ans. ¶ 17.)  *See McCullum v. City of Phila.*, No. 98-5858, 1999 WL 493696, at *2 (E.D. Pa. Jul. 13, 1999) ("[P]rivate contractors who run prisons [act] under color of state law for purposes of section 1983."); *see also Bell v. Mgmt. & Training Corp.*, 122 Fed. App'x 219, 222 (6th Cir. 2005) (unpublished opinion) (noting that "private companies operating prisons can be state actors for the purposes of controlling or providing services to inmates"); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (holding that private company performing function of incarcerating inmates was acting under color of state law); *Plain v. Flicker*, 645 F. Supp. 898, 907 (D.N.J. 1986) (stating that "if a state contracted with a private corporation to run its prisons it would no doubt subject the private prison authorities to § 1983 suits").  Courts in this district have reached the same conclusion with respect to GEO Group's management of the Delaware County Prison.  *See Belt v. GEO Group, Inc.*, No. 06-1210, 2007 WL 1030530, at *3 n.1 (E.D. Pa. Apr. 4, 2007) (holding same with respect to GEO Group's administration of the same facility).

6

issue of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of demonstrating that there are no facts supporting the nonmoving party's legal position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (explaining that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The nonmoving party "cannot 'rely merely upon bare assertions, conclusory allegations or suspicions' to support its claim." *Fin. Software Sys., Inc., v. Lecocq*, No. 07-3034, 2008 WL 2221903, at *2 (E.D. Pa. May 29, 2008) (*quoting Fireman's Ins. Co. v. DeFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). Rather, the party opposing summary judgment must go beyond the pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. When deciding a motion for summary judgment, we must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). However, we must not resolve factual disputes or make credibility determinations. *Siegel Transfer*, 54 F.3d at 1127.

## IV.     DISCUSSION

### A.     "Delaware County Prison" as a Party Amenable to Suit under § 1983

Defendant Delaware County Prison, now known as the George W. Hill Correctional Facility, contends that it is not a proper party amenable to suit because it is "merely the name of

a collection of buildings" not unlike "the Empire State Building" or "the Eiffel Tower."  (Doc. No. 97 at 4.)  Defendant Delaware County Prison also contends that Delaware County owns the facility and the Delaware County Board of Prison Inspectors operates it pursuant to special legislation.  The Board of Prison Inspectors contracted with Defendant GEO Group to operate the prison.  (*Id.*)  Neither Delaware County nor the Delaware County Board of Prison Inspectors is a defendant in this lawsuit.  Plaintiff argues that the Delaware County Prison, a/k/a the George W. Hill Correctional Facility, "is a proper party to the instant action" since it "is also a correctional facility" and "the identity of the party intended is undisputed."  (Doc. No. 94 at 19.)

In the Third Circuit, it is well-settled that a prison or correctional facility is not a "person" that is subject to suit under federal civil rights laws.  *See Amaro v. Montgomery County*, No. 06-3131, 2008 WL 4148610, at *4 (E.D. Pa. Sept. 8, 2008) (noting that the Montgomery County Correctional Facility was not a "person" for purposes of § 1983); *Ramalho v. Montgomery County Corr. Facility*, No. 06-2036, 2007 WL 1810700, at *1 (E.D. Pa. Jun. 21, 2007) (dismissing county jail since "for purposes of the § 1983 claim" it was "not a 'person' amenable to suit"); *Meyers v. Schuylkill County Prison*, No. 04-1123, 2006 WL 559467, at *8 (M.D. Pa. Mar. 7, 2006) (holding that a county prison is not a "person" within the meaning of § 1983); *Jackson v. Pennsylvania*, No. 08-1297, 2008 WL 4279544, at *1 (M.D. Pa. Sept. 11, 2008) (holding same); *Kelly v. York County Prison*, No. 08-1813, 2008 WL 4601797, at *2 (M.D. Pa. Oct. 15, 2008) (noting that a "prison or correctional facility is not a person within the meaning of § 1983" and "the York County Prison is clearly not a person and may not be sued under § 1983"); *Sponsler v. Berks County Prison*, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995) ("A prison is not a 'person' subject to suit under the civil rights laws.") (citation

8

omitted); *Dixon v. Montgomery County Corr. Facility*, No. 89-0972, 1989 WL 14073, at *1
(E.D. Pa. Feb. 21, 1989) (dismissing complaint against correctional facility since "[a] prison is
not a 'person' for the purposes of § 1983"); *Wiggins v. Montgomery County Corr. Fac.*, No. 87-
6992, 1987 WL 14721, at *1 (E.D. Pa. Nov. 16, 1987) ("[T]he Montgomery County Correctional
Facility is not a person under § 1983."); *Mitchell v. Chester County Farms Prison*, 426 F. Supp.
271, 274 (E.D. Pa. 1976) ("Defendants assert that Chester County Farms Prison is not a 'person'
subject to suit under the federal civil rights law.  I agree."); *see also Adams v. Hunsberger*, 262
Fed. App'x 478, 481 (3d Cir. 2008) (unpublished opinion) ("The District Court properly
concluded that [the plaintiffs'] claims against the Pennsylvania Department of Corrections were
barred, as it is not a 'person' within the meaning of 42 U.S.C. § 1983."); *Phippen v. Nish*, 223
Fed. App'x 191, 192 (3d Cir. 2007) (unpublished opinion) (noting same with respect to state
correctional institution); *Slagle v. County of Clarion*, 435 F.3d 262, 264 n.3 (3d Cir. 2006)
(affirming on other grounds and observing that "[t]he District Court dismissed Clarion County
Jail as a defendant in this case, stating 'it is well established in the Third Circuit that a prison is
not a "person" subject to suit under federal civil rights laws'"); *Fischer v. Cahill*, 474 F.2d 991
(3d Cir. 1973) (New Jersey prison medical department held not a "person" under § 1983).

Based upon this line of cases, courts in this District have held that the Delaware County
Prison, a/k/a the George W. Hill Correctional Facility, is not a legal entity that is amenable to
suit.  *See Ignudo v. McPhearson*, No. 03-5459, 2004 WL 1320896, at *2 (E.D. Pa. Jun. 10, 2004)
("[Plaintiff] also names as a Defendant the George W. Hill Correctional Facility.  The George
W. Hill Correctional Facility is not a legal entity susceptible to suit."); *Jenkins v. Del. County
Prison*, No. 91-7071, 1992 WL 59130, at *1 (E.D. Pa. Mar. 20, 1992) ("Delaware County Prison

9

is not a person under section 1983 and must therefore be dismissed.  That is to say, Delaware

County Prison has no separate corporate existence apart from Delaware County itself."); *Day v.*

*Del. County Prison*, No. 91-6935, 1991 WL 240609, at *1 (E.D. Pa. Nov. 12, 1991) (dismissing

complaint where "[t]he only defendant named in the action is Delaware County Prison [and]

Delaware County Prison is not a 'person' as that term is used in section 1983").

      Courts outside of the Third Circuit have reached similar conclusions.  *See, e.g.*, *Aston v.*

*Cunningham*, 216 F.3d 1086 (table), No. 99-4156, 2000 WL 796086, at *4 n.3 (10th Cir. Jun. 21,

2000) (unpublished opinion) ("[Plaintiff] named the Salt Lake County jail as a defendant.

Dismissal against this entity was also required because a detention facility is not a person or

legally created entity capable of being sued."); *Preval v. Reno*, 203 F.3d 821 (table), No. 99-

6950, 2000 WL 20591, at *1 (4th Cir. Jan. 13, 2000) (unpublished opinion) ("The court also

properly determined that the Piedmont Regional Jail is not a 'person' and is therefore not

amenable to suit under § 1983, and we affirm dismissal of the claims against the jail for that

reason."); *Marsden v. Federal BOP*, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an

entity amenable to suit under 42 U.S.C. § 1983); *Powell v. Cook County Jail*, 814 F. Supp. 757,

758 (N.D. Ill. 1993) (Cook County Jail not a "person" under § 1983); *McCoy v. Chesapeake*

*Corr. Ctr.*, 788 F. Supp. 890, 893-94 (E.D. Va. 1992) (local jail not a "person" under § 1983);

*Vance v. County of Santa Clara*, 928 F. Supp. 993, 995 (N.D. Cal. 1996) (county department of

corrections is an agency of the county and cannot be sued separately from the county under §

1983); *Mayes v. Elrod*, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) (county department of

corrections not a legal entity separate from the county).

      Plaintiff relies on one case, *Slater v. Susquehanna County*, No. 07-2304, 2008 WL

2779302, at *7 (M.D. Pa. Jul. 14, 2008), for the proposition that a correctional facility is a proper party amenable to suit.  (*See* Doc. No. 94 at 19.)  In *Slater*, the plaintiff was a female corrections officer who alleged discrimination and harassment in the course of her employment.  *See* 2008 WL 2779302, at *1.  The case included Susquehanna County and the Susquehanna County Correctional Facility, "a subdivision of Susquehanna County," as defendants.  *Id.*  The defendants filed a motion to dismiss the plaintiff's state law tort claims, arguing that they were immune as a "local agency" under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541.  *Id.* at *7.  The court agreed, concluding that the defendants – including the Facility – were local agencies immune from the tort claims.  *See id.*

*Slater* does not stand for the broad proposition that a county jail is a "person" amenable to suit under § 1983.  The *Slater* court merely mentioned that the defendants, including the Susquehanna County jail, were local agencies immune from liability for certain torts.  The court said nothing about the county jail's existence as a legal entity subject to suit under § 1983. Moreover, other courts in the Middle District have determined that the Susquehanna County Jail is not a "person" amenable to suit under § 1983.  *See, e.g.*, *Knorr v. Susquehanna County Prison*, No. 06-2427, 2007 WL 852539, at *1 (M.D. Pa. Mar. 19, 2007) ("[T]he Susquehanna County Prison is clearly not a person and may not be sued under § 1983."); *Sanders v. Susquehanna County Jail*, No. 05-2271, 2005 WL 2990697, at *2 (M.D. Pa. Nov. 8, 2005) (noting that "[a] prison or correctional facility is . . . not a person within the meaning of § 1983" and therefore "the Susquehanna County Jail is likewise not a person and may not be sued under § 1983"); *see also Ball v. SCI-Muncy*, No. 08-0701, 2008 WL 233551, at *4 (M.D. Pa. Jan. 30, 2009) (noting that "a prison or correctional facility is not a 'person' within the meaning of § 1983"); *Ogden v.*

*Huntingdon County*, No. 06-2299, 2007 WL 2343814, at *3 (M.D. Pa. Aug. 15, 2007) (noting

with respect to Huntingdon County Prison that "prisons and other correctional facilities are not

'persons' within the meaning of § 1983"); *Reynolds v. Lackawanna County Prison*, No. 06-1190,

2006 WL 1896178, at *1 (M.D. Pa. Jul. 7, 2006) (noting same with respect to Lackawanna

County Prison); *Reseigh v. Luzerne County Corr. Facility*, No. 06-1911, 2006 WL 2924876, at

*2 (M.D. Pa. Oct. 10, 2006) (noting same with respect to the Luzerne County Correctional

Facility).  Accordingly, Plaintiff's reliance on *Slater* is misplaced.  Since a prison or correctional

facility is not a person amenable to suit within the meaning of § 1983, summary judgment must

be granted in favor of Defendant Delaware County Prison, a/k/a George W. Hill Correctional

Facility.

> **B.      Federal Claims against Defendant GEO Group under § 1983**

Plaintiff's federal civil rights claims against Defendant GEO Group are grounded on (1)

the existence of a conspiracy to violate Plaintiff's rights; and (2) a policy or custom under the

*Monell* standard.  *See Monell v. N.Y. City Dep't of Social Servs.*, 436 U.S. 658, 693-95 (1978).

> *1.      Conspiracy to Violate Civil Rights under § 1983*

Plaintiff asserts in her Amended Complaint that Defendant GEO Group "conspired to

violate [her] constitutional rights, falsely imprison her and also to suffer physical and emotional

injury."  (Am. Compl. ¶ 68.)  A plaintiff alleging conspiracy to violate civil rights must present

material facts which show that the purported conspirators reached some understanding or

agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal

right.  *See D.R. by L.R. v. Middle Bucks Area Voc. Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir.

1992) (en banc); *see also Nieves v. Dragovich*, No. 96-6525, 1997 WL 698490, at *8 n.9 (E.D.

Pa. Nov. 3, 1997), *aff'd*, 175 F.3d 1011 (3d Cir. 1999) (noting that the plaintiff "must assert facts from which a conspiratorial agreement can be inferred" in order to avoid summary judgment).

Defendant GEO Group argues that "[t]here is nothing in the record of this case that a conspiracy existed" and that "[w]hen questioned pointedly on this issue, Plaintiff[,] her brother and her mother could offer nothing – no evidence, no information, no documents, no witnesses – to support [the] claims of this non-existent conspiracy." (Doc. No. 75 at 15.) Plaintiff does not address this argument in her response to the summary judgment motion. Indeed, Plaintiff does not mention, much less argue, the existence of a conspiracy.[6] (*See* Doc. No. 94.) Clearly, the claims based on a conspiracy are abandoned and summary judgment must be granted in favor of Defendant GEO Group on these claims. *See Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (granting summary judgment because plaintiff failed to address one of the defendant's arguments in his summary judgment motion, which resulted in the plaintiff's waiver of the opportunity to contest summary judgment on that ground); *Evans v. Nine West Group, Inc.*, No. 00-4850, 2002 U.S. Dist. LEXIS 6427, at *12-13 (E.D. Pa. Apr. 15, 2002) (finding that the plaintiff abandoned a claim by failing to assert the claim in her opposition to defendant's summary judgment motion and stating, "[u]nder analogous circumstances, courts both within and beyond the Third Circuit routinely have held the claim at issue to have been abandoned"); *Hackett v. Cmty. Behavioral Health*, No. 03-6254, 2005 U.S. Dist. LEXIS 8410, at *23 (E.D. Pa. May 6, 2005) (finding that the plaintiff only addressed her retaliation claims but not her race and

---

[6] We note that Plaintiff's response to Defendants' motion *in limine* to preclude evidence or testimony in support of a claim of conspiracy adds little to the discussion. It simply states that there is "more than sufficient evidence in the record" to support a finding that "certain, if not all of the defendants conspired to violate Plaintiff's civil rights." (Doc. No. 121.)

gender discrimination claims, therefore, she abandoned the latter claims); *see also Player v. Motiva Enters. LLC*, 240 Fed App'x 513 (3d Cir. 2007) (unpublished opinion) (noting that the plaintiff could not argue on appeal that the district court failed to consider evidence where the plaintiff "never argued . . . that there was a genuine issue of material fact" regarding the claim).

## 2. Monell *Claim under § 1983*

Plaintiff also asserts a § 1983 claim based on a government policy or custom. *See Monell*, 436 U.S. at 693-95. Under *Monell*, a city, municipality, or private entity that is a state actor "may not be held vicariously liable under section 1983 for the actions of its agents" since "[t]here is no *respondeat superior* theory of municipal liability." *Sanford v. Stiles*, 456 F.3d 298, 314 (3d Cir. 2006) (*citing Monell*, 436 U.S. 658 at 691 (1978)); *see also Doby v. Decrescenzo*, No. 94-3991, 1996 WL 510095, at *19 (E.D. Pa. Sept. 9, 1996), *aff'd*, 171 F.3d 858 (3d Cir. 1999) ("The Supreme Court's holding in *Monell* applies with equal force to both municipalities and private entities which are state actors."). Rather, a municipality or private entity that is a state actor may be held liable "only if its policy or custom is the 'moving force' behind a constitutional violation." *Sanford*, 456 F.3d at 314 (citations omitted). The existence of a policy or custom can be established (1) by showing that a "decision maker possessing final authority to establish municipal policy with respect to the action issued an official statement of policy," *Jiminez v. All Am. Rathskeller*, 503 F.3d 247, 250 (3d Cir. 2007) (*quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)), or (2) by demonstrating that a "custom" exists "when, though not authorized by law, the 'practices of state officials [are] so permanent and well settled' that they operate as law," *id.* (*quoting Monell*, 436 U.S. at 690).

Once a policy or custom is identified, a plaintiff must establish that the municipality

maintained the policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (stating that the "deliberate indifference" standard, though originally created in the context of a failure to train claim, has been applied to other claims of municipal liability based on policy or custom). With respect to deliberate indifference, "'something more culpable [must be shown] than a negligent failure to recognize [a] high risk of harm' to plaintiffs." *Black by Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 712-13 (3d Cir. 1993) (*quoting Colburn v. Upper Darby*, 946 F.2d 1017, 1025 (3d Cir. 1991)). A plaintiff must establish that the deliberate indifference to which she was subjected came about as a result of the policy. *See Monell*, 436 U.S. at 690-91; *see also Frake v. City of Chicago*, 210 F.3d 779, 781 (7th Cir. 2000) ("A plaintiff must show that municipal policymakers made a deliberate choice among various alternatives and that the injury was caused by the policy.").

Plaintiff contends that "it is clear that the policy [on prisoner releases] is flawed and that the defendants knew that the policy and procedure were flawed." (Doc. No. 94 at 19.) The prison policy requires that OTN numbers on an inmate's commitment order match the numbers on the inmate's release order before the inmate is released. When the numbers do not match, "the release procedure [is] put on hold," as it was here. (*See* Doc. No. 94 at 20.) Plaintiff argues that there is "a dark side" to this policy since Plaintiff's discrepancy was not resolved for five days. (*See id.*) Plaintiff contends – without citation to the record – that, therefore, "the policy regularly leads to the violation of prisoners' rights to be released once bail is posted." (*Id.*) Defendant GEO Group responds that there is no evidence of any deliberate indifference on

which to ground Plaintiff's *Monell* claim.  (*See* Doc.  No. 75.)

We agree that Plaintiff's *Monell* claim fails since there is no evidence that Defendant GEO Group acted with deliberate indifference to the consequences of the policy.  Defendant GEO Group's expert witness stated in his report that the prison policy of not releasing inmates unless their commitment papers match their release papers was consistent with the American Correctional Association's national standard "and sound correctional practices."  (Owens Report, Doc. No. 75, Ex. K.)  This statement is uncontroverted.[7]  (*See* Pl.'s Expert Thomas J. Lacey's Reply to the Owens Report, Doc. No. 88-4.)  In addition, Plaintiff correctly points out that during Grear's deposition testimony, Grear "acknowledged that . . . 'errors' [in mismatching OTN numbers] will result in a prisoner's release being delayed, but that such delays are unusually quickly resolved, as a simple call to the issuing court clears up the discrepancy." (Doc. No. 94 at 21.)  Grear testified as follows:

> Q:     Now, let's say the commitment papers don't match up with the one – in this case there were two, there were two separate bails, two commitments.  Let's say one of the commitments doesn't match up with the release paper.  What is the procedure at that point in time?
>
> A:     To call the courts to confirm what the case numbers are on the release.
>
> Q:     Okay.  Do the district justices generally cooperate in doing that?
>
> A:     Yes.
>
> . . .
>
> Q:     Let's say you get a hold of the . . . district justice and you're able to figure out that there was a snafu, somebody wrote the wrong number.  What do you do in that case?
>
> A:     We confirm the number and see whoever we talked to and change the number.

---

[7]  Plaintiff relies on an expert report of Thomas J. Lacey, Esq., for the proposition that Defendant GEO Group's policy is flawed because it "allowed for no comparison and/or common-sense discretion by staff, thus leading to Plaintiff's . . . imprisonment for five days following the posting of her bond."  (Doc. No. 94 at 21.)  However, Lacey does not dispute that granting discretion to prison staff is inconsistent with the American Correctional Association's national standard "and sound correctional practices."  (*See* Owens Report, Doc. No. 75, Ex. K.)

(Grear Dep. 16-18.)  There is no evidence that Defendant GEO Group's practice of calling the district justice to resolve discrepancies has ever delayed an inmate's release as it did in the instant case.  The instant case presents a unique circumstance in which the discrepancy occurred right before the Christmas holiday when the office of the district justice closed for several days and the discrepancy could not be resolved.  There is no evidence that this circumstance had ever occurred before or since the incident with Plaintiff.  On the record before us, a reasonable jury could not conclude that the result of Defendant GEO Group's policy that resulted in the isolated incident involving Plaintiff's delayed release was maintained with deliberate indifference to the alleged constitutional deprivations that it caused.  *See Monell*, 436 U.S. at 690.  Summary judgment therefore must be entered in favor of Defendant GEO Group on Plaintiff's *Monell* claim.

### D.    State Law Claims[8]

Plaintiff asserts state law claims of negligence against Defendant GEO Group and false imprisonment against Defendants GEO Group and the Delaware County Prison.

#### 1.    *Negligence Claim*

First, Plaintiff asserts that Defendant GEO Group "was negligent in the processing and

---

[8] Under 28 U.S.C. § 1367(a), a federal court may assert supplemental jurisdiction over state claims when a federal claim is properly before the court.  However, when all federal claims have been dismissed, the court has discretion to dismiss the remaining state claims.  *See* 28 U.S.C. § 1367(c)(3).  Section 1367(c)(3) specifically states that the district court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."  The court's discretion as to whether to exercise jurisdiction over these remaining claims should be informed by principles of judicial economy, convenience, fairness, and comity.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  We will assert supplemental jurisdiction over Plaintiff's remaining state law claims since the record is well-developed, discovery is completed, and trial is scheduled in less than two weeks.  Our exercise of supplemental jurisdiction over these claims promotes judicial economy, convenience, and fairness to the parties.  *See id.*

handling of Plaintiff's release from prison once her brother had paid bail."  (Am. Compl. ¶ 114.)

Under Pennsylvania law, "[i]n any case sounding in negligence, a plaintiff must demonstrate:

(1) a duty of care; (2) the breach of the duty; (3) a causal connection between the conduct and

the resulting injury; and (4) actual loss or damage resulting to the plaintiff."  *Farabaugh v. Pa.*

*Turnpike Comm'n*, 911 A.2d 1264, 1272-73 (Pa. 2006) (*citing R.W. v. Manzek*, 888 A.2d 740,

746 (Pa. 2005)); *see also Toney v. Chester County Hosp.*, 961 A.2d 192, 198 (Pa. Super. Ct.

2008) (noting same).

        We are aware of no authority in the Third Circuit or under Pennsylvania law that

establishes the contours of the duty of care that a Pennsylvania jailer must exercise to effect a

prisoner's release.  *Cf.* 18 U.S.C. § 4042 (providing for the general duty of care owed by the

federal Bureau of Prisons).  Courts in other jurisdictions have held that jailers have a duty to

effect a prisoner's release within a reasonable amount of time.  *See, e.g.*, *Whirl v. Kern*, 407 F.2d

781, 792 (5th Cir. 1968), *cert. denied*, 396 U.S. 901 (1969).  In *Whirl*, the plaintiff sued the

sheriff for false imprisonment and deprivation of civil rights after the sheriff allegedly held the

plaintiff in custody for nine months after the court had dismissed the charges against him.  *See*

*id.*  In outlining the duty of care owed by the sheriff to effect a prisoner's release, the court noted

as follows:

> The responsibility for a failure of communication between the courts and the
> jailhouse cannot justifiably be placed on the head of a man immured in a lockup
> when the action of the court has become a matter of public record.  Ignorance and
> alibis by a jailer should not vitiate the rights of a man entitled to his freedom.  A
> jailer, unlike a policeman, acts at his leisure.  He is not subject to the stresses and
> split second decisions of an arresting officer, and his acts in discharging a prisoner
> are purely ministerial.  Moreover, unlike his prisoner, the jailer has the means, the
> freedom, and the duty to make necessary inquiries.  While not a surety for the legal
> correctness of a prisoner's commitment, . . . he is most certainly under an obligation
> . . . to carry out the functions of his office.  Those functions include not only the duty
> to protect a prisoner, but also the duty to effect his timely release.

18

*Id.* (citations omitted).  The court concluded that the sheriff's duty to release a prisoner "is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained."  *Id.*  While the court emphasized that a prison official does not "commit[] an instant tort at the moment when his prisoner should have been released," the court held that the sheriff's "ignorance for nine long months after the termination of all proceedings against [the plaintiff] was, as a matter of law, ignorance for an unreasonable time." *Id.*  Subsequent decisions have clarified that "*Whirl* does not require police officers to track down every lead; it merely holds that they cannot negligently ignore a notice specifically sent to them requiring that a detainee be released."[9]  *Kelly v. Curtis*, 21 F.3d 1544, 1551-52 (11th Cir. 1994).

In the instant case, Defendant GEO Group contends that "[t]he undisputed facts . . . are that the error in Plaintiff's Commitment paperwork for the Violation of the PFA case was made by someone at the Upper Darby District Court" and "[t]he prison officials have no legal authority to correct a Court order."[10]  (Doc. No. 75 at 22-23.)  Thus, Defendant GEO Group argues that "there is no . . . legal duty on the part of prison officials to ignore errors" on court paperwork.  (*Id.* at 23.)  Plaintiff responds that "[t]here is simply no law, either case or statutory,

---

[9] The Fifth Circuit has noted that "subsequent decisions on false imprisonment and the Supreme Court's decisions on official immunity cast considerable doubt on the wisdom or continued vitality of th[e] decision [in *Whirl*]."  *Bryan v. Jones*, 530 F.2d 1210, 1213 (5th Cir. 1976), *cert. denied*, 429 U.S. 865 (1976); *see also Erickson v. Smith County*, No. 07-0135, 2007 WL 2907823, at *7 (E.D. Tex. Oct. 1, 2007) (noting subsequent decisions).  Those subsequent decisions deal with official immunity and good faith defenses.  We cite *Whirl* for the limited holding that in a negligence action based on state law, a jailer has a duty to carry out his functions in releasing inmates within a reasonable amount of time.

[10] Defendant GEO Group does not argue that it is immune from Plaintiff's negligence claim.

cited to by the moving defendant which says that prisoners cannot be released on bail unless the OTN number in the release document matches an OTN number in the commitment document." (Doc. No. 94 at 23.)

We conclude that Plaintiff cannot maintain a negligence claim based on Defendant GEO Group's failure to release Plaintiff without release papers with matching OTN numbers. The undisputed facts before us show that Defendant GEO Group's policy was "sound" and appropriate. (*See* Owens Report.) The policy is also consistent with the prison's obligations to comply with Pennsylvania regulations that govern the release of inmates. *See* 37 Pa. Code § 95.222.[11]

The real issue here is whether Defendant GEO Group acted negligently by failing to take reasonable steps to resolve the discrepancy. Defendant GEO Group had a duty to "make necessary inquiries" to ensure Plaintiff's timely release consistent with its duty to "proper[ly] identif[y]" her. *See* 37 Pa. Code § 95.222; *Whirl*, 407 F.2d at 792. Plaintiff proffers no evidence that Defendant GEO Group failed to make an inquiry to resolve the discrepancy. Plaintiff was released on December 28th after Defendant GEO Group consulted with the district court. The passage of five days was an unfortunate consequence of the Christmas holiday and the fact that the office of the district justice was closed during this period. Defendant GEO Group did not intentionally or negligently delay for five days.

Defendant GEO Group's alleged negligence centers on a window of several hours on

---

[11] Under these regulations, a prison must adopt a "written local policy" that requires it to verify the "proper legal authority and completeness of paperwork" before releasing an inmate. 37 Pa. Code § 95.222. The regulations provide that "[r]elease procedures must include . . . [p]roper identification of [the] inmate." *Id.* The policy at issue here, 2500.01, is in furtherance of these regulations.

December 23rd during which Plaintiff alleges that the district court was open and Defendant

GEO Group could have resolved the discrepancy.  (*See* Lacey Reply, Doc. No. 88-4.)  However,

Defendant GEO Group's duty "is not breached until the expiration of a reasonable time for the

proper ascertainment of the authority upon which [Plaintiff was] detained."  *See Whirl*, 407 F.2d

at 792.  The passage of several hours on December 23rd is not an unreasonable amount of time

for Defendant GEO Group to have ascertained its authority to release Plaintiff.  Under normal

circumstances, it can take "at least four to six hours" to process an inmate's release paperwork.

(Grear Dep. 17.)  This was the Christmas holidays.  Defendant GEO Group discharged twenty-

five other inmates on December 23rd.  (*See* Discharge Records, Doc. No. 75, Ex. L; *see also*

Owens Report.)  Defendant GEO Group resolved the discrepancy with Plaintiff's paperwork the

very next day that the district court was open.  Plaintiff was released on that day.  There is no

evidence that Defendant GEO Group did not act reasonably under the circumstances.

    Moreover, Plaintiff presents no evidence that DellaSorda or other GEO Group employees

did not attempt to reach the district court when they discovered the discrepancy.  Plaintiff has not

met her burden.  Under all of the circumstances, and considering all of the evidence in the

record, a reasonable jury could not conclude that Defendant GEO Group acted negligently.

2.    <em>False Imprisonment Claim</em>

    Finally, Plaintiff claims that she was falsely imprisoned.[12]  Under Pennsylvania law,

"[t]he elements of false imprisonment are (1) the detention of another person, and (2) the

---

    [12] Plaintiff's Amended Complaint also asserts a claim of false arrest against Defendant
GEO Group.  It is undisputed that Defendant GEO Group did not arrest Plaintiff.  It merely
operated and maintained the jail in which Plaintiff was confined.  Plaintiff does not argue the
false arrest claim against Defendant GEO Group.  Rather, she argues only a false imprisonment
claim.  (*See* Doc. No. 94 at 19-20.)

unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994); *see also Zumbado v. City of Allentown*, No. 07-2459, 2009 WL 310236, at *10 (E.D. Pa. Feb. 6, 2009) (noting same).  False imprisonment is an intentional tort.  *See Ortiz v. Saul*, No. 08-1436, 2008 WL 5114584, at *5 (M.D. Pa. Dec. 4, 2008) (*citing Renk*, 641 A.2d at 292-94.)

Defendants contend that Plaintiff's incarceration was proper because "her release from [the facility] was not appropriate unless and until the appropriate paperwork was received from the committing authority."  (Doc. No. 75 at 21.)  An unreasonable delay in a prisoner's release can result in false imprisonment.  *See Burgess v. Roth*, 387 F. Supp. 1155, 1161 (E.D. Pa. 1975). In *Burgess*, the parole board ordered a prison to release the plaintiff, an inmate.  *Id.*  The parole board's policy was to hand-deliver release orders to the prison.  *Id.* at 1160.  The hand-delivery policy occasioned a six-day delay in the plaintiff's release.  *Id.* at 1161.  The plaintiff brought a claim that "sound[ed] in tort, specifically the tort of false imprisonment, for 'unreasonable delay in releasing a person after he has a right to be released. . . .'"  *Id.*  In granting summary judgment in favor of the parole board, the court held that "[o]nly an unreasonable delay in a prisoner's release will result in the tort of false imprisonment."  *Id.*  The court found that the six-day delay was not unreasonable since "the board promptly set the release machinery in motion."  *Id.*

For the reasons discussed in the context of Plaintiff's negligence claim, the delay in this case was not unreasonable.  This was the Christmas holiday.  There were a number of inmates who were seeking release.  Plaintiff's brother got to the prison at about noon.  There was a legitimate problem with the paperwork that had to be resolved by the court.  There was only a short window of time – a matter of several hours – to resolve the problem.  The fact that Plaintiff was in custody for several days was the result of the Christmas holiday, not the intentional or negligent conduct of GEO Group.  Since "[o]nly an unreasonable delay in [Plaintiff's] release

will result in the tort of false imprisonment," Plaintiff's false imprisonment claim must fail.  *See*

*Burgess*, 387 F. Supp. at 1161.  Moreover, false imprisonment is an intentional tort, and Plaintiff

presents no facts that Defendants acted intentionally to delay her release.  Plaintiff's false

imprisonment claim must also fail for this reason.  *See, e.g.*, *Campbell v. Acme Markets, Inc.*, 18

Phila. Co. Rptr. 524, 556 (Pa. Ct. Com. Pl. Jan. 12, 1989), *aff'd*, 571 A.2d 497 (Pa. Super. Ct.

1989) ("The jury's finding of non-negligence simply has no bearing on [the defendant's] liability

for the intentional tort[] of . . . false imprisonment.")

## V.     CONCLUSION

For these reasons, Defendants GEO Group and the Delaware County Prison's Motion for

Summary Judgment will be granted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LYNNE A. REGAN                    :
                                  :                    CIVIL ACTION
        v.                        :
                                  :                    NO. 06-1686
UPPER DARBY TOWNSHIP, ET AL.      :


**<u>ORDER</u>**

        AND NOW, this   11th   day of March, 2009, upon consideration of Defendants GEO

Group, Inc., and the Delaware County Prison's Motion for Summary Judgment (Doc. No. 75),

and all documents submitted in support thereof and in opposition thereto, it is ORDERED that

the Motion is GRANTED.

        IT IS SO ORDERED.

                                            BY THE COURT:



                                            _____
                                            R. Barclay Surrick, J.